# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Douglas A. Kelley, in his Capacity as the PCI Liquidating Trustee for the PCI Liquidating Trust,<br><br>Plaintiff,<br><br>v.<br><br>Gus Boosalis,<br><br>Defendant. | Case No. 0:18-cv-00868 (SRN/TNL)<br><br><br>**ORDER RE: JURY INSTRUCTION** |

John R. Marti, Andrew B. Brantingham, Christina Hanson, and J. David Jackson, Dorsey & Whitney LLP, 50 South 6th Street, Suite 1500, Minneapolis, Minnesota 55402, for Plaintiff Douglas A. Kelley, in his Capacity as Trustee for the PCI Liquidating Trust.

Daniel J. Frisk and Mark A. Schwab, Schwab, Thompson & Frisk, 820 34th Avenue East, Suite 200, West Fargo, ND, 58078; Don R. Grande, Don R. Grande, PC, 2700 12th Ave. S., Suite A, Fargo, ND 58103, for Defendant Gus Boosalis.

SUSAN RICHARD NELSON, United States District Judge

On November 26, 2018, trial commenced in this fraudulent transfer action brought by Plaintiff Douglas A. Kelley, in his Capacity as Trustee for the PCI Liquidating Trust ("the Trustee"), against Defendant Gus Boosalis. The Trustee's claims are asserted under provisions of the Bankruptcy Code and the Minnesota Uniform Fraudulent Transfer Act, (the "MUFTA"), Minn. Stat. §§ 513.41–.51. At issue is the Court's proposed jury instruction on "reasonably equivalent value," to which Boosalis objects. The Court heard argument on this issue at the November 30, 2018 jury instruction charge conference, and

1

requested briefing, which the parties have since filed. (*See* Def.'s Jury Instr. Mem. [Doc. No. 101]; Pl.'s Response [Doc. No. 102].) For the reasons set forth below, Defendant's objection is overruled.

I. BACKGROUND

As discussed in more detail in the Court's November 19, 2018 Order on Motions in Limine [Doc. No. 86], incorporated here by reference, the Trustee was appointed to represent the interests of numerous creditors in Chapter 11 bankruptcy proceedings related to the massive Ponzi scheme perpetrated by Tom Petters, the debtor Petters Company, Inc. ("PCI"), and related debtor entities. (*See* Second Am. Compl. ¶¶ 4–5.) PCI functioned as the central funding mechanism of Petters' Ponzi scheme, whereby Petters and his associates sought investors' funds to allegedly purchase non-existent electronic goods. *See United States v. Reynolds*, 643 F.3d 1130, 1132 (8th Cir. 2011); *In re Polaroid*, 472 B.R. 22, 36 (Bankr. D. Minn. 2012). Petters used the funds invested by later investors to repay initial investors. (*See* Second Am. Compl. ¶¶ 21, 28–30.) This suit is one of several in which the Trustee, under the authority of state and federal fraudulent transfer statutes, seeks to recover certain funds that were paid to earlier, satisfied investors in the Ponzi scheme, and redistribute any of the recovered funds to later investors, who received little or no return on their investments. *See In re Petters Co., Inc.*, 550 B.R. 457, 461–62 (Bankr. D. Minn. 2016).

Whether each transfer between PCI and Boosalis was based on fraud is a question of fact for the jury. Although Boosalis may have received over $8 million in transfers from PCI, the Trustee seeks to recover only the interest payments that PCI made

2

to Boosalis totaling at least $3,134,590.00, and not any amounts that represent the return of Boosalis's principal investment. The Trustee contends that Boosalis should have been aware, or, through the exercise of due diligence, should have known of the fraudulent nature of the transactions, which Boosalis disputes. Again, the parties' respective positions create a fact question for the jury.

Boosalis has denied the Trustee's allegations and raised a number of affirmative defenses, including: (1) that the transfers were made to him for value and as payment of principal and interest on an antecedent debt; (2) that he took the transfers in good faith and without knowledge of the alleged voidability of the transfers at the time they were received; and (3) that PCI received reasonably equivalent value for the transfers.

## II. DISCUSSION

The issue of reasonably equivalent value is relevant to the Trustee's prima facie case as well as Defendant's affirmative defense. One element of a claim for constructive fraud under the MUFTA requires the Trustee to show that PCI made transfers to Boosalis "without receiving reasonably equivalent value" in return. *Finn v. Alliance Bank*, 860 N.W.2d 638, 645 (Minn. 2015). And, as part of Defendant's affirmative defense to the Trustee's claim of actual fraud, Boosalis may show that he took PCI's transfers "in good faith and for reasonably equivalent value."[1] *Id.* As defined under the MUFTA, "reasonably equivalent value" means that "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred . . . ." Minn. Stat. § 513.44.

---

[1] Minn. Stat. § 513.44(a)(1).

The proposed jury instruction, as amended by modifications discussed at the charge conference, reads as follows:

> Reasonably equivalent value may be found if the value Petters Company, Inc. received from Mr. Boosalis in exchange for a payment was reasonably equivalent to the value of the payment.
>
> Value may be reasonably equivalent where the payment made to the investor satisfies a valid antecedent debt. Any payment above the amount of the principal investment is not in satisfaction of a valid antecedent debt if it was made in furtherance of a fraud, enabled by a fraud, or paid on dishonestly-incurred debt. If you find that an interest payment made by Petters Company, Inc. to Mr. Boosalis was made in furtherance of a fraud, enabled by a fraud, or paid on dishonestly-incurred debt, then that payment does not satisfy a valid antecedent debt, and is not for reasonably equivalent value.

Boosalis maintains that the Court's proposed instruction conflicts with the Minnesota Supreme Court's ruling in *Finn v. Alliance Bank*, 860 N.W.2d 638 (2015). (*See generally*, Def.'s Jury Instr. Mem.) He contends that the instruction improperly relies on the Ponzi scheme presumption, rejected in *Finn*. (*Id.* at 1–8.) He further contends that the transfers in question, of both principal and interest, were for reasonably equivalent value, (*id.* at 9–11), and that the promissory notes are legally enforceable. (*Id.* at 11–20.) Boosalis counters with the following proposed instruction on reasonably equivalent value:

> Reasonably equivalent value may be found if the value Petters Company, Inc. received from Defendant in exchange for a payment was reasonably equivalent to the value of the payment. Value may be reasonably equivalent where the payment is made to satisfy an antecedent debt. An antecedent debt includes any legally enforceable right to payment against Petters Company, Inc.

(*Id.* at 1.)

4

Prior to trial, Boosalis raised similar arguments concerning the impact of *Finn*, which the Court addressed in its Order on Motions in Limine. (*See* Nov. 19, 2018 Order at 6, 8, 13.) As the Court noted in that ruling, in *Finn*, the Minnesota Supreme Court rejected the application of the "Ponzi scheme presumption" to fraudulent transfer claims arising under the MUFTA. 860 N.W.2d at 646–50. The Court disagrees with Defendant's general argument that the proposed jury instruction on reasonably equivalent value improperly relies on the Ponzi scheme presumption. As the Court made clear in its Order on the Motions in Limine, (*see* Nov. 19, 2018 Order at 9–11), in light of *Finn*, the Trustee may not rely upon the Ponzi scheme presumption, but will instead be put to its proof of the fraud in this case. Consistent with the Court's ruling, the Trustee has been required to prove its case on a transfer-by-transfer basis.

In reaching its decision in *Finn*, the Minnesota Supreme Court identified three conclusive underlying presumptions on which the overall Ponzi scheme presumption is based: (1) the debtor had fraudulent intent, such that all transfers from the Ponzi scheme were actually fraudulent; (2) with respect to constructive fraud, as a matter of law, the debtor was insolvent at the time of a the disputed transfers; and (3) also with respect to constructive fraud, a court must presume that any transfer from the Ponzi scheme was not for reasonably equivalent value. 860 N.W.2d. at 646. The Minnesota Supreme Court found that these underlying presumptions did not sufficiently account for different factual circumstances, nor were they consistent with Minnesota law. For instance, the Court found that the third underlying presumption regarding reasonably equivalent value would

5

"both establish the second requirement of a constructive-fraud claim and negate the statutory defense to an actual-fraud claim." *Id.* (citations omitted).

In addition, the Minnesota Supreme Court found that application of the Ponzi scheme presumption would *compel* the conclusion "that a debtor operating a Ponzi scheme cannot receive reasonably equivalent value for the 'interest' or 'profits' it pays to investors." *Id.* at 649. As the Court noted, under the MUFTA, "the satisfaction of an antecedent debt can constitute reasonably equivalent value." *Id.* at 650. Notably, the structure of the underlying Ponzi scheme in *Finn* involved a mixture of legitimate deals and fraudulent deals, specifically the sale of loan participation interests that were fictitious as well as the sale of participation interests that were genuine. *Id.* at 642. The *Finn* appellants were all investors who had purchased actual, legitimate loans. *Id.* at 652. Given those facts, the Minnesota Supreme Court found that the "value" given these investors in exchange for Ponzi scheme proceeds was for "the satisfaction of an antecedent debt." *Id.* at 651.

The Court noted that antecedent debt may take many forms, citing cases in which the satisfaction of antecedent debt was considered "fair consideration" for a transfer, such that the conveyance was not subsequently deemed fraudulent. *Id.* at 650–51 (citing *Kummet v. Thielen*, 298 N.W. 245, 246 (Minn. 1941) (involving a personal loan between two spouses and one spouse's right to insurance proceeds covering damages for household furnishings and effects); *Skinner v. Overend*, 252 N.W. 418, 418–19 (Minn. 1934) (finding transfer of unpaid wages from father to son, to which son was contractually entitled, did not constitute a fraudulent conveyance). The Minnesota

6

Supreme Court concluded that "any legally enforceable right to payment against the debtor is sufficient to qualify as an antecedent debt under MUFTA." *Id.* at 651 (citing *Kummet*, 298 N.W. at 247) (noting that the obligation in question was "enforceable"). The Court observed that "[a]bsent the existence of a Ponzi scheme, [a promise to provide investors with disbursements for their participation interests] would fit comfortably within the realm of antecedent debt, and satisfaction of that promise could constitute 'value," as that term is defined in MUFTA. *Id.* However, "[w]ithout a legally enforceable contractual claim, any payment made to an investor beyond its principal investment is not for antecedent debt, and therefore cannot be in exchange for reasonably equivalent value." *Id.*

Defendant cites *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 477 (7th Cir. 2005), *In re Sharp International Corp.*, 403 F.3d 43, 50 (2d Cir. 2005), and *Image Masters, Inc. v. Chase Home Finance*, 489 B.R. 375, 389 (E.D. Pa. 2013), for the proposition that repayment of antecedent debt constitutes an exchange for reasonably equivalent value. As the Court has recognized above, it does not dispute that general proposition, but Defendant's cases are factually distinguishable from the record facts here. The debt at issue in *B.E.L.T.* was not related to the transferor's fraudulent conduct and the record lacked evidence of its repayment , 403 F.3d at 478, the *In re Sharp* matter apparently did not involve a Ponzi scheme, nor was there a dispute concerning the "fair equivalence" of the payment in question, 403 F.3d at 54, and *Image Masters* did not involve the recovery of interest payments received by the lender on a fraudulent loan. 489 B.R. at 375.

7

Here, however, the parties dispute the question of reasonably equivalent value, whether PCI conducted legitimate business with Defendant's money, and whether PCI made interest payments on Defendant's investment with funds obtained as the result of the scheme. This Court's proposed jury instruction on reasonably equivalent value is fully consistent with the disputed facts and with *Finn*, stating, in part, "Value may be reasonably equivalent where the payment made to the investor satisfies a valid antecedent debt. Any payment above the amount of the principal investment is not in satisfaction of a valid antecedent debt if it was made in furtherance of a fraud, enabled by a fraud, or paid on dishonestly-incurred debt." (*See supra* at 4.)

Defendant's proposed instruction, however, leaves the jury to decide whether Boosalis has a "legally enforceable" right to retain the interest payments received from PCI. The question of whether an enforceable contract exists—and whether the contract may be considered void as against public policy—is a question of law for the Court, and not a question of fact for the jury. *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 93 (Minn. 2006); *see also Richie Co., LLP v. Lyndon Ins. Grp., Inc.*, 316 F.3d 758, 760 (8th Cir. 2003). A contract may be void against public policy if it is "injurious to the interest of the public or contravenes some established interest of society." *Isles Wellness, Inc.*, 725 N.W.2d at 93. Under Minnesota law, a contract that aims to deceive a third party is void. *Torpey v. Murray*, 101 N.W.2d 609, 610 (Minn. 1994); *see also Horbach v. Coyle*, 2 F.2d 702, 706 (8th Cir. 1924) ("A contract which has for its object the perpetration of a fraud on a third person is illegal and void.")

While Defendant cites authority for the proposition that a contract is enforceable if it is merely "incidentally or indirectly" or "only remotely" connected with an illegal transaction, (*see* Def.'s Jury Instr. Mem. at 12), the jury must resolve the fact question of whether the promissory notes between PCI and Defendant are tangentially connected to the fraud or directly connected to it.

The Court's proposed instruction, set forth above, properly instructs the jury to find facts regarding whether Boosalis has a valid right to retain the interest payments that he received from PCI. The jury will decide the disputed fact question of whether PCI used the promissory notes between PCI and Boosalis as part of a Ponzi scheme to defraud other investors and whether it repaid the notes with fraudulently-obtained funds. Defendant is free to present evidence showing that he provided value in exchange for the transfers.

Accordingly, for all of the foregoing reasons, the Court finds its proposed instruction, *supra* at 4, is consistent with the facts at issue here and with Minnesota law. Defendant's objection is therefore overruled.

**SO ORDERED.**

December 3, 2018
s/Susan Richard Nelson
Susan Richard Nelson
United States District Judge